UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MEERA GODBOLE,<br><br>  Plaintiff,<br><br>v.<br><br>DENNIS RIES ET AL,<br><br>  Defendants. | No. 15 C 5191<br><br>Magistrate Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Meera Godbole ("Godbole") brought this action against Defendants Sussex Square Condominium Association, Lieberman Management Services, Inc. and Jane Clifford (collectively, "Defendants"). Defendants moved to dismiss Counts II, III, V and VI of Godbole's Third Amended Complaint (the "Complaint") under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Motion is granted in part and denied in part.

## I. BACKGROUND

The Complaint alleges that Godbole is a tenant in the condominium owned by her mother, Aneeta Godbole ("Aneeta") (Dkt. 65 (Compl.), p.1). Godbole moved into the property to assist her mother. (*Id.* at ¶17). Both women are of Indian descent and have a disability. (*Id.*, p.1.). Godbole helps her mother physically and with communication because English is Aneeta's second language. (*Id.* at ¶17). In 2013, Aneeta had surgery and needed to walk on a flat surface. (*Id.* at ¶18). Godbole and

her mother requested that the Sussex Square Condominium Association ("Association") provide an unobstructed path between Aneeta's front door and driveway. (*Id.* at ¶¶2, 18).

The Godboles' requests were met with hostility from the Association, Lieberman Management Services, Inc. ("LMS") and the Godboles' neighbors, the Reis family. (*Id.* at ¶¶ 2, 18-26). An LMS employee ridiculed people with disabilities and the Godboles' request for a clear walkway (*id.* at ¶2); the Association and LMS demanded Aneeta use her back door so that she would not walk on the shared pathway (*id.*); the Association demanded medical proof showing why Aneeta could not use a different route (*id.* at ¶18); the Association told Godbole she could not speak at Association meetings or communicate with it directly (*id.* at ¶20); the Association issued parking tickets to Godbole after she began advocating even though other residents used the guest parking without repercussion (*id.*); Jane Clifford ("Clifford"), President of the Association Board installed a lamp-post that shined into the windows of the Godbole home and encouraged residents to install blue lights on their homes (*id.* at ¶¶48-49); and Clifford voted onto the Board Mrs. Reis, Godbole's next door neighbor, who was hostile to Godbole. (*Id.* at ¶53).

Godbole brought this lawsuit alleging violations of the Fair Housing Act (FHA), 42 U.S.C. § 3601 *et seq.* (Compl., ¶13).[1] Godbole settled her claims against

---

1 Before filing this lawsuit, Godbole filed with the Illinois Department of Human Rights (IDHR) a complaint against Kelly Koehler and the Association (Compl., ¶24; Dkt. 88-1 at 8). On June 25, 2015, the IDHR dismissed the complaint for lack of substantial evidence. (Dkt. 88-1 at 2).

Defendants Jennifer Reis and Dennis Reis. (Dkt. 77). The remaining Defendants move to dismiss Counts II, III, V, and VI of the Complaint (Dkt. 88 at 1).

## II. DISCUSSION

### A. Applicable Law

A court deciding a Rule 12(b)(6) motion must "construe [the complaint] in the light most favorable to the plaintiff, accept well-pleaded facts as true, and draw all inferences in the plaintiff's favor." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014). While a complaint must contain "enough details about the subject-matter of the case to present a story that holds together," the pertinent question is "could these things have happened, not *did* they happen." *Id.* at 827 (internal citations and quotations omitted) (emphasis in original). Rule 8 requires a short and plain statement showing the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a). The level of specificity required in the complaint depends on the complexity of the case. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010). When deciding a motion to dismiss, a court considers exhibits attached to the complaint; if there are contradictions between the complaint and an exhibit, the exhibit usually controls. *Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007); *Thompson v. Ill. Dept. of Prof'l Reg.*, 300 F.3d 750, 754 (7th Cir. 2002).

### B. FHA Violations by the Association, LMS, and Clifford (Counts II and V)

The purpose of the FHA is to "provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601. The FHA's protections

including prohibiting housing discrimination based on disability. 42 U.S.C. § 3604; *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 728 (1995); *see also United States v. Wren*, No. 13 CV 8284, 2015 U.S. Dist. LEXIS 178521, at *10 (N.D. Ill. Aug. 24, 2015).

In her Complaint, Godbole alleges that the Association and LMS violated the FHA by "failing to make and enforce rules to keep walkways accessible to people with disabilities, have rendered the premises inaccessible to Aneeta Godbole and other people with disabilities in violation of the [FHA]." (Compl. ¶33). Godbole also alleges that Clifford, as President of the Association, violated the FHA by using her position to treat residents differently and by failing to enforce the Association by-laws in an "even-handed manner." *Id.* at ¶47. If the Association, LMS, and Clifford properly enforced the by-laws, Aneeta would have had an unobstructed walkway. *Id.* at ¶¶32-33, 47(b).

In the introduction of the Motion, Defendants state that they are moving to dismiss Counts II, III, V and VI (Dkt. 88 at 1), but the 3-page Motion focuses solely on Godbole's claims under 42 U.S.C. § 3617. Defendants do not address Counts II and V. The Court is not required to construct arguments for Defendants. *See Pine Top Receivables of Ill., LLC v. Banco de Seguros del Estado,* 771 F.3d 980, 987 (7th Cir. 2014) ("[i]t is not the obligation of [a] court to research and construct the legal arguments open to parties, especially when they are represented by counsel [and] perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived") (internal citations and quotations omitted);

*Waldock v. M.J. Select Glob., Ltd.,* No. 03 C 5293, 2005 U.S. Dist. LEXIS 38001, at *47-48 (N.D. Ill. Dec. 27, 2005) (denying motion to dismiss count because defendants' argument was undeveloped and did not lay ground work for the court to address the argument); *Blaz v. Michael Reese Hosp. Found.*, 191 F.R.D. 570, 572 (N.D. Ill. 1999) (defendants waived argument by failing to offer any pertinent discussion of argument). Thus Defendants waived any argument to dismiss Counts II and V.[2]

## C. Claims under 42 U.S.C. § 3617 against the Association, LMS, and Clifford (Counts III and VI)

To state a claim under 42 U.S.C. § 3617, Godbole must allege that Defendants "coerced, threatened, intimidated, or interfered with her on account of her protected activity under the FHA." *Herndon v. Hous. Auth. of S. Bend, Ind.,* No. 16-2821, 2016 U.S. App. LEXIS 20387, at *5 (7th Cir. Nov. 14, 2016) (internal citation and quotations omitted). Defendants correctly acknowledge that a Section 3617 claim can be distinct from §§3603-3606 violations. (Dkt. 88 at 2); *Bloch v. Frischholz*, 587 F.3d 771, 782 (7th Cir. 2009).

---

[2] The Complaint provides (barely) enough to put Defendants on notice of Godbole's claims in Counts II and V. Godbole identifies the type of discrimination (disability), by whom (the Association, management company LMS, and Ms. Clifford), and when (starting in 2013, when Aneeta Godbole had surgery giving rise to her need for an unobstructed walkway, until about June 2015 (Compl. ¶¶18, 25.)). *See Swanson*, 614 F.3d at 405. Nevertheless, based on the allegations in the Complaint, the Court warns Godbole that proving her case will require providing evidence to show, among other things, that Defendants acted because of Aneeta's disability (*see Brown v. Warren Cnty.*, 830 F.3d 464, 467-68 (7th Cir. 2016)) and had a discriminatory intent or motive. *See Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 135 S. Ct. 2507, 2513 (2015).

Defendants argue that Godbole does not sufficiently allege that she is a protected individual under the FHA (Dkt 88 at 3), which Godbole construes as a challenge to her standing. (Dkt. 90 at 6-7). But Godbole alleges that she and her mother have a disability and that Godbole advocated for Aneeta's fair housing rights. That is enough at this stage. *See Herndon*, 2016 U.S. App. LEXIS 20387, at *4-5; *see also Frederiksen v. Hyatt Regency Indianapolis*, No. 1:13-cv-283-WTL-DML, 2013 U.S. Dist. LEXIS 66668, at *1 (S.D. Ind. May 10, 2013) (plaintiff need not plead specific nature of disability). In addition, standing under the FHA is broadly construed. *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 372 (1982) ("Congress intended standing under [the FHA] to extend to the full limits of Art. III."); *Gorski v. Troy,* 929 F.2d 1183, 1189 (7th Cir. 1991) ("a plaintiff suing pursuant to the FHA need not be a member of the class that was the object of discrimination to satisfy the injury-in-fact requirement"); *Novak v. State Parkway Condo. Ass'n*, No. 13 C 08861, 2015 U.S. Dist. LEXIS 28021, at *9 (N.D. Ill. Mar. 6, 2015) (daughter of hearing-impaired parents had standing under FHA).

Regardless of Godbole's own disability status, she qualifies as a person who aided another person in the exercise or enjoyment of her FHA rights. The Department of Housing and Urban Development ("HUD") interprets 42 U.S.C. § 3617 as making it unlawful to "coerce, intimidate, threaten, or interfere with any person…*on account of that person having aided or encouraged any other person* in the exercise or enjoyment of, any right granted or protected by this part." 24 C.F.R. §100.400(b) (emphasis added). Examples of unlawful conduct under Section 3617

include "[i]ntimidating or threatening any person because that person is engaging in activities designed to make other persons aware of, or encouraging such other persons to exercise, rights granted or protected by this part" or retaliating because the person "has made a complaint, testified, assisted, or participated in any manner in a [FHA] proceeding." §100.400(c)(4) and (c)(5). *See also Davis v. Fenton*, No. 13 C 3224, 2016 U.S. Dist. LEXIS 50145, at *28, n.8 (N.D. Ill. Apr. 13, 2016) (noting that the Seventh Circuit has followed this HUD regulation). Godbole's allegations show that she has standing and engaged in protected activity under the FHA.

The parties also disagree about whether Godbole must plead discriminatory intent (Dkt. 88 at 3; Dkt. 90 at 7). Discriminatory intent is an element of a Section 3617 claim. *E.-Miller v. Lake Cty. Highway Dep't*, 421 F.3d 558, 563 (7th Cir. 2005). A plausible allegation of discriminatory intent is required at the pleading stage. *Sheikh v. Rabin,* 565 F. App'x 512 (7th Cir. 2014) (affirming dismissal of Section 3617 claim and finding that statement did not "plausibly allege discriminatory intent"); *Fenton*, 2016 U.S. Dist. LEXIS 50145, at *26 (dismissing Section 3617 claim and stating that "the retaliatory conduct itself must be motivated by a discriminatory intent.") (citations omitted); *Wetzel v. Glen St. Andrew Living Cmty.*, No. 16 C 7598, 2017 U.S. Dist. LEXIS 6437, at *4 (N.D. Ill. Jan. 18, 2017) (dismissing Section 3617 interference claim because plaintiff did not plead facts alleging discriminatory intent); *Cf. Herndon*, 2016 U.S. App. LEXIS 20387, at *4-5 (plaintiff's allegations were sufficient and she was not required to "plead more specific facts that would establish the defendant' discriminatory intent."). Godbole

has met the minimum requirement to plausibly allege discriminatory intent on the part of the Association and LMS. Godbole alleges that in 2013, at an Association meeting, an LMS employee ridiculed people with disabilities and the Godbole's request for a clear walkway. (Compl. ¶2). From 2013 until at least 2015, Godbole alleges that the Association and LMS failed to ensure an unobstructed walkway for Aneeta and their conduct was "intentional, willful, and taken in disregard of the rights of Ms. Godbole, her mother, and other people with disabilities…" (*Id.* at ¶¶25-26, 32-33, 36). On the other hand, the Complaint contains no plausible allegation that Clifford acted with discriminatory intent.[3] Count VI must be dismissed for that reason.

Moreover, the Court agrees with Defendants that Defendants' alleged conduct does not rise to the level that is required under Section 3617. (Dkt. 88 at 3). Godbole's allegations of interference, retaliation, or intimidation are that the Association forbade her from communicating directly with them (Compl. ¶37); the Association issued parking tickets to Godbole (*Id.* at ¶38); and LMS ridiculed people with disabilities (*Id.* at ¶40). As for Clifford, Godbole alleges that Clifford "emitted a miasma of ignored complaints and formal prohibitions on communication from Ms. Godbole" (*Id.* at ¶51); "caused [the Association] to issue guest parking tickets" to

---

[3] Godbole says Clifford encouraged residents to install blue lights which Godbole characterizes as "racially-charged scare tactics." (*Compl.* ¶¶48-49). These allegations do not suggest Clifford acted with discriminatory intent or motive based on disability. And Godbole does not state in the Complaint, nor does she argue in her response brief, that she is claiming discrimination based on race or national origin.

Aneeta (*Id.* at ¶52); and added to the Association Board Mrs. Reis, Godbole's next door neighbor, who was hostile to Godbole. (*Id.* at ¶54).[4]

Courts generally apply Section 3617 to "threatening, intimidating, or extremely violent discriminatory conduct designed to drive an individual out of his home." *Whisby-Myers v. Kiekenapp*, 293 F. Supp. 2d 845, 852 (N.D. Ill. 2003) (internal citations and quotations omitted). The Seventh Circuit has stated that there are "less violent but still effective, methods by which a person can be driven from his home and thus 'interfered' with in his enjoyment of it." *Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n*, 388 F.3d 327, 330 (7th Cir. 2004).

In *Halprin*, the president of the homeowners' association wrote derogatory messages on the wall of plaintiffs' property, vandalized the property, destroyed flyers posted by plaintiff offering a reward for identifying the vandal, and threatened at a board meeting to "make an example" of plaintiffs. The association also applied chemicals to the plaintiffs' yard which adversely impacted their health

---

[4] Godbole's Response to the Motion to Dismiss contains several statements that are not in her Complaint or do not support her argument that she has sufficiently alleged a Section 3617 claim. Godbole says the Association encouraged residents to call the police on her. (Dkt. 90 at 3). But that allegation is not in the Complaint. Godbole argues that the retaliation occurred when "she had the police called on her, and she was prosecuted" (*Id.* at 8). Godbole refers to the incident in July 2014 when Ms. Ries pressed charges against Godbole and Godbole had to do community service and hire a defense attorney. (Compl. ¶5). However the police report, which Godbole attaches to her complaint, states that Godbole admitted to making physical contact with Jenny Reis. (Dkt 65-5 at 2-3). This admission contradicts Godbole's allegation about her "alleged touching" of Reis' shoulder. (Compl. ¶5). *See Thompson*, 300 F.3d at 754 ("where a plaintiff attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim."). There is nothing to indicate that this incident involved anyone other than Godbole and the Ries family. This incident does not lend any support for Godbole's retaliation claims against the Association, LMS, or Clifford.

and peace of mind, destroyed its own meeting minutes to interfere with plaintiffs' attempts to investigate the vandalism of their property, and adopted rules restricting plaintiffs' use of their property. *Id.* at 328. Though there was no cross-burning or physical assaults, these allegations showed a "*pattern* of harassment, invidiously motivated, and, [] backed by the homeowners' association." (emphasis in original). *Id.* at 330. In *Herndon*, "intimidating harassments and threats to terminate [plaintiff's] lease, threatening eviction in response to her complaint to the Human Rights Commission, and performing repeated housing inspections, at times twice a month" were enough to state a claim of retaliation. 2016 U.S. App. LEXIS 20387, at *5-6. In *Mehta v. Beaconridge Improvement Ass'n*, 432 F. App'x 614, 617 (7th Cir. 2011), the Seventh Circuit held that pro se plaintiff gave fair notice of his retaliation claim when he alleged that the association prevented his family from using the common facilities, maliciously designated his account as delinquent, performed work that was not needed and billed him for it, and threatened to file a lien on his home.

By contrast, in *Chi. Title & Land Tr. Co. v. Rabin*, No. 11-cv-425, 2012 U.S. Dist. LEXIS 10681, at *10 (N.D. Ill. Jan. 30, 2012), *aff'd Sheikh v. Rabin*, 565 F. App'x 512, plaintiff failed to state a claim under Section 3617 because allegations of Defendants' making offensive comments and angrily waiving a finger at plaintiff were not "legitimately threatening or violent actions." In *Wood v. Briarwinds Condo. Ass'n Bd. of Dirs.*, 369 F. App'x 1 (11th Cir. 2010), plaintiff failed to allege coercion or intimidation under the FHA because he alleged only that he was

retaliated against when his van, which was leaking oil, was towed, a board member complained that he was violating pool rules by using a mask and snorkel in the pool, and the board member assessed fines against him for the oil leak and took photographs of him.

Godbole's allegations are more similar to the allegations in *Sheikh* and *Wood* than to those in *Halprin, Herndon,* or *Mehta.* None of Defendants' alleged acts rise to the level of being "legitimately threatening or violent actions… designed to drive an individual out of his home." *See Sheikh*, 2012 U.S. Dist. LEXIS 10681, at *9-10. Nor do these acts, taken together, amount to a "*pattern of* harassment, invidiously motivated." *Halprin,* 388 F.3d at 330. A letter attached to the Complaint shows the Association had a rule reserving visitor parking solely for visitors (Dkt. 65-3 at 1). Presumably if the Association repeatedly issued parking tickets solely to Godbole over the course of two years, those fines might suggest a pattern of invidiously-motivated harassment by the Association. The complaint refers to "parking tickets", but provides no details about when these parking tickets were issued or how many there were, and a letter attached to the Complaint describes only one instance of a single fine of $25 which was issued *to Aneeta,* not Godbole. (Dkt. 65-4). Godbole also claims that the Association retaliated in part by forbidding her from communicating directly with the Association. But a letter attached to the Complaint shows that the Association had a policy of communicating with only unit owners (Dkt. 65-1 at 1), suggesting that Defendants did not act *on account of* her advocacy for her mother (*Herndon,* 2016 U.S. App. LEXIS 20387, at *5), but simply because it was

Association policy. *See Davis*, 2016 U.S. Dist. LEXIS 50145, at *24 (observing that most Section 3617 litigation "centers on direct, extralegal acts of interference or retaliation"). Further, as the letter attached to the Complaint describes, at an Association meeting, Aneeta told Godbole not to speak to the Board about her issue (Dkt. 65-1). Godbole argues that Clifford's encouraging residents to hang blue lights was "further retaliation" (Dkt. 90 at 4), but there is no allegation that this was done on account of Godbole's advocacy for her disabled mother's walkway. Clifford's placing Ms. Ries on the Association Board (Compl. ¶53) also does not rise to the level of conduct required for a Section 3716 claim. Godbole has not alleged conduct on the part of the Association, LMS or Clifford to state a cause of action under Section 3617.

Counts III and VI are dismissed without prejudice.

### III. CONCLUSION

For the reasons discussed above, Defendants' Motion to Dismiss [88] is GRANTED as to Counts III and VI and DENIED as to Counts II and V. Counts III and VI are dismissed without prejudice.

E N T E R:

Dated: January 19, 2017

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge